STATE of Alaska, Appellant,

v.

Benjamin ALBERT, Appellee.

No. S–5754.

Supreme Court of Alaska.

June 23, 1995.

**104**

Marilyn May, Asst. Atty. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for appellant.

Susan Orlansky, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for appellee.

Scott A. Brandt–Erichsen, Asst. Mun. Atty., Richard L. McVeigh, Mun. Atty., Anchorage, for amicus curiae Municipality of Anchorage.

Before MOORE, C.J., RABINOWITZ, MATTHEWS, COMPTON, JJ., and BRYNER, J. Pro Tem.*

## OPINION

MATTHEWS, Justice.

In *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the United States Supreme Court held that in state criminal prosecutions "counsel must be provided for defendants unable to employ counsel" because of indigency. 372 U.S. at 340, 83 S.Ct. at 794. *Gideon*, however, did not address the subject of whether states could attempt to recover from indigent defendants some of the costs of providing counsel to them. Currently, all states and the federal government have some type of cost recoupment system.[1] Consolidated cases presently before this court challenge Alaska's recoupment system.

Alaska's system is set forth in AS 18.85.120(c), Alaska Criminal Rule 39, and Alaska Appellate Rule 209(b). *See* Appendix A. In brief, AS 18.85.120(c) authorizes the court, upon a person's criminal conviction, to enter a civil judgment against "a person for whom counsel is appointed ... for services of representation and court costs." It provides that upon a showing of financial hardship, the court shall order payment in installments. Remission, reduction or deferral of the judgment can be ordered. AS 18.85.120(c). Payment is made to the state general fund. *Id.* Criminal Rule 39 and Appellate Rule 209(b) set forth procedures which implement the recoupment system.

Under Criminal Rule 39, when an indigent person who has been represented by court-

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

**1.** Robert L. Spangenberg, et al., *Containing the Costs of Indigent Defense Programs: Eligibility,* *Screening and Cost Recovery Programs* 33 & Appendix A (1986).

appointed counsel is convicted, the court issues a notice of intent to enter judgment for the cost of appointed counsel calculated in accordance with a schedule set out in subsection (d). Alaska R.Crim.P. 39(c)(1)(A). The scheduled fees are significantly lower than those charged by private counsel, ranging downward from the maximum of $5,000 for trial of a first or second degree murder charge. Upon receipt of a notice of intent to enter judgment, a defendant may oppose entry of judgment; if opposition is filed, a hearing may be held.[2] Alaska R.Crim.P. 39(c)(1)(C). The schedule of fees may be varied "for good cause shown" by either the prosecuting authority or the defendant, in which case actual costs and expenses will be assessed. Alaska R.Crim.P. 39(d).

If a recoupment judgment is entered, it has the same force and effect as a judgment in a civil action, Alaska R.Crim.P. 39(c)(2)(A), and proceedings to enforce the judgment are the same as those applicable to civil judgments.[3] The judgment is not enforceable by contempt, payment of the judgment may not be a condition of the defendant's probation, and failing to pay the judgment does not affect the services available to the defendant from appointed counsel on appeal "or any other phase of a defendant's case in any way." Alaska R.Crim.P. 39(c)(2)(B).

A defendant does not have the right to be represented by court-appointed counsel in connection with proceedings related to the notice of intent to enter the recoupment judgment, or to the collection of the judgment. Alaska R.Crim.P. 39(c)(2)(B). On a showing of financial hardship, the court shall order payment in installments. It may order remission, reduction or deferral of the unpaid portion of the judgment. Alaska R.Crim.P. 39(c)(2)(C).

Alaska residents are entitled to an annual permanent fund dividend.[4] AS 43.23.005. Recently the dividend has been in excess of $900. In recognition of this income source shared by all Alaskans, Criminal Rule 39(c)(1)(A) authorizes the court to order a convicted defendant to apply for a permanent fund dividend for every year in which the defendant qualifies for a dividend until the judgment is paid in full. A defendant may be held in contempt of court if the defendant does not comply with this order. Alaska R.Crim.P. 39(c)(2)(D).

Appellate Rule 209 is similar to Criminal Rule 39. At the conclusion of appellate procedures, if the conviction of a defendant who is represented by appointed counsel is not reversed, the clerk shall serve the defendant with a notice which sets out the amount of the judgment which may be entered against the defendant. Alaska R.App.P. 209(b)(6). The amount is calculated according to a schedule designed to charge substantially less than fees charged by private counsel for the same services. The fees range downward from $2,000 for a combined merit and sentence appeal. Alaska R.App.P. 209(b)(7). The defendant has a right to oppose entry of the judgment. Alaska R.App.P. 209(b)(6). A judgment entered under Appellate Rule 209, like a Criminal Rule 39 judgment, is collectible in the same manner as an ordinary civil judgment. Alaska R.App.P. 209(b)(6).

---

2. Although the rule is silent as to the circumstances under which a hearing must be held when opposition is filed, our cases generally indicate the necessity for an evidentiary hearing in any case in which there are factual disputes on material issues. *See, e.g., Douglas v. State, Dep't of Revenue,* 880 P.2d 113, 117 (Alaska 1994); *Perry v. Newkirk,* 871 P.2d 1150, 1156 (Alaska 1994); *Murray v. Murray,* 856 P.2d 463, 466–67 (Alaska 1993); *Adrian v. Adrian,* 838 P.2d 808, 812 (Alaska 1992); *Epperson v. Epperson,* 835 P.2d 451, 453 (Alaska 1992); *Carter v. Brodrick,* 816 P.2d 202, 204–205 (Alaska 1991); *Smith v. State, Dep't of Revenue,* 790 P.2d 1352, 1353 (Alaska 1990); *Robbins v. Robbins,* 647 P.2d 589, 592 (Alaska 1982). This precept applies to Criminal Rule 39(c) as well.

3. These judgments, like other civil judgments entered by Alaska lower courts, are appealable as a matter of right. AS 22.05.010; Appellate Rule 202(a), 602(a)(1); *cf., K & L Distributors v. Murkowski,* 486 P.2d 351 (Alaska 1971) (supreme court has constitutional duty to review agency action even where such review is prohibited by statute).

4. Convicted felons are not entitled to the dividend during any year in which they are incarcerated as a result of their conviction. AS 43.23.005(d).

Recoupment judgments are subject to the exemptions on execution and garnishment applicable to other civil judgments as specified in the Alaska Exemption Act, AS 09.38.010–.510. This act is designed to ensure that debtors can maintain "a certain basic level of economic vitality" and live "in reasonable comfort." *Gutterman v. First Nat'l Bank of Anchorage*, 597 P.2d 969, 970, 972 (Alaska 1979). The exemptions provided include an exemption of net weekly earnings of $402.50 for an individual[5] and $632.50 for a head of household,[6] a homestead exemption of $62,100,[7] and exemptions for motor vehicles ($3,450), trade tools ($3,220), jewelry ($1,150) and household goods ($3,450).[8] Unmatured life insurance and annuity contracts are exempt up to $11,500, and retirement plans are exempt without limit.[9] The annual permanent fund dividend is not exempt with respect to child support, restitution in criminal cases, or debts owed the state.[10]

## I. PROCEEDINGS BELOW

On May 3, 1993, in *State v. George*, No. 4FA–S93–230 Cr. (Alaska Dist.Ct., May 3, 1993), a case in which court-appointed counsel was defending an indigent, Judge Charles Pengilly of the District Court for the Fourth Judicial District, *sua sponte* declared Criminal Rule 39 unconstitutional.[11] Judge Pengilly held that the rule violates the indigent defendant's rights (1) to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 11 of the Alaska Constitution; (2) to a jury trial in civil cases under article I, section 16 of the Alaska Constitution; and (3) to equal protection under article I, section 1 of the Alaska Constitution. The State appealed this order to the superior court and the appeal was transferred to this court by order of July 2, 1993.

On June 1, 1993, in *State v. Albert*, No. 4FA–S89–3009 Cr. (Alaska Super., June 1, 1993), another case in which an indigent was defended by court-appointed counsel, Superior Court Judge Mary Greene declared Criminal Rule 39 unconstitutional for the reasons set forth by Judge Pengilly in *George*. The State appealed. Numerous additional cases followed the same pattern. We ordered that all appeals from orders declaring Criminal Rule 39 unconstitutional be consolidated with the *Albert* appeal, whether they arise from the district court or the superior court, and designated *Albert* as the lead case on appeal. We appointed counsel for appellees to brief and present oral argument on each of the three points on which Judge Pengilly relied.

## II. RIGHT TO COUNSEL

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." This right applies to the states, requiring them to provide counsel for indigent defendants in criminal cases. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The Alaska Constitution contains a cognate provision: "In all criminal prosecutions, the accused shall have the right ... to have the assistance of counsel for his defense." Alaska Const. art. I, § 11.

Judge Pengilly ruled that Criminal Rule 39 violates the right to counsel, guaranteed by the Sixth Amendment and article I, section 11 of the Alaska Constitution, because it is not " 'carefully designed' to 'take into account the ability to pay of a defendant who had been furnished counsel.' " Decision at 10. Judge Pengilly distilled the requirement that ability to pay be taken into account from the only two Supreme Court cases which have reviewed defense cost recovery systems,

5. AS 09.38.030(a); 8 Alaska Administrative Code (AAC) 95.030(d) (1995).

6. AS 09.38.050(b); 8 AAC 95.030(e) (1995).

7. AS 09.38.010; 8 AAC 95.030(a) (1995).

8. AS 09.38.020(a), (b), (c), (e); 8 AAC 95.030(b) (1995).

9. AS 09.38.025, AS 09.38.017; 8 AAC 95.030(c) (1995).

10. AS 43.23.065(b).

11. For convenience we follow the parties' practice of using "Criminal Rule 39" to refer not only to the provisions of the rule but to the other elements of our recoupment system.

*James v. Strange,* 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972), and *Fuller v. Oregon,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), and from several lower court decisions.

At issue in *James* was the constitutionality of a Kansas recoupment statue under which civil judgments were entered against defendants for the amount expended in their defense. The recoupment judgment debtors were not accorded any of the exemptions provided other judgment debtors, except for a homestead exemption. At the outset the *James* court noted that the Kansas system was one of many state recoupment systems and that such systems differed significantly in their particular characteristics. In view of these differences, the Court observed that "any broadside pronouncement on their general validity would be inappropriate." *Id.* at 133, 92 S.Ct. at 2030. The Court noted that the district court had invalidated the Kansas law on the basis that it " 'needlessly encourages indigents to do without counsel and consequently infringes on the right to counsel as explicated in *Gideon v. Wainwright.'* " *Id.* at 134, 92 S.Ct. at 2031. The Court approached this rationale with skepticism, observing that there was no denial of the right to counsel "in the strictest sense" for "Kansas has enacted laws both to provide and compensate from public funds counsel for the indigent." *Id.* The Court, however, reserved the question "[w]hether the statutory obligations for repayment impermissibly deter the exercise of [the right to counsel]." *Id.* Instead, noting that the recoupment judgment debtor was stripped of "the array of protective exemptions Kansas has erected for other civil judgment debtors" the Court held that this aspect of the statute violated "the rights of citizens to equal treatment under the law." *Id.* at 135, 142, 92 S.Ct. at 2031–32, 2035. In reaching this conclusion, the Court noted that recoupment debtors need not be treated in all respects identically to judgment debtors owing obligations to private creditors:

> We recognize, of course, that the State's claim to reimbursement may take precedence, under appropriate circumstances, over the claims of private creditors and that enforcement procedures with respect

to judgments need not be identical. This does not mean, however, that a State may impose unduly harsh or discriminatory terms merely because the obligation is to the public treasury rather than to a private creditor.

*Id.* at 138, 92 S.Ct. at 2033. The Court concluded:

> We thus recognize that state recoupment statutes may betoken legitimate state interests. But these interests are not thwarted by requiring more even treatment of indigent criminal defendants with other classes of debtors to whom the statute itself repeatedly makes reference. State recoupment laws, notwithstanding the state interests they may serve, need not blight in such discriminatory fashion the hopes of indigents for self-sufficiency and self-respect. The statute before us embodies elements of punitiveness and discrimination which violate the rights of citizens to equal treatment under the law.

*Id.* at 141–42, 92 S.Ct. at 2035.

Two years after its decision in *James,* the United States Supreme Court revisited the subject of state recoupment laws in *Fuller,* 417 U.S. 40, 94 S.Ct. 2116. The Oregon statute at issue there permitted probation to be conditioned on repayment of counsel fees. However, repayment could not be ordered unless the convicted person had, or would have, the ability to repay, and there were provisions for the remission of the obligation to repay in cases of manifest hardship. The Oregon statute also provided that failure to pay a recoupment order could be punishable as a contempt of court unless the defendant showed that the failure was not attributable to an intentional refusal to obey the order of the court or to a failure on the part of the defendant to make a good faith effort to pay. *Id.* at 43 n. 5 and 46, 94 S.Ct. at 2120 n. 5 and 2121. The Court held the Oregon statute to be constitutional, stressing the fact that the Oregon statute only imposed an obligation to repay the costs of counsel on those with a foreseeable ability to meet that obligation. *Id.* at 52–54, 94 S.Ct. at 2124–25. The Court also noted that the Oregon statute, unlike the Kansas statute reviewed in *James,* preserved

for the benefit of the convicted person exemptions normally available to judgment debtors.

In concluding that the Oregon statute was constitutional, the Court decided the question which it reserved in *James:* whether imposing an obligation to repay impermissibly deterred the exercise of the right to counsel. The Court answered this question in the negative, disapproving of the deterrence rationale enunciated by the Supreme Court of California in *In re Allen,* 71 Cal.2d 388, 78 Cal.Rptr. 207, 455 P.2d 143 (1969). The Court stated:

> [Fuller] asserts that a defendant's knowledge that he may remain under an obligation to repay the expenses incurred in providing him legal representation might impel him to decline the services of an appointed attorney and thus "chill" his constitutional right to counsel.
>
> This view was articulated by the Supreme Court of California, in a case invalidating California's recoupment legislation, in the following terms:
>
> "[W]e believe that as knowledge of [the recoupment] practice has grown and continues to grow many indigent defendants will come to realize that the judge's offer to supply counsel is not the gratuitous offer of assistance that it might appear to be; that, in the event the case results in a grant of probation, one of the conditions might well be the reimbursement of the county for the expense involved. This knowledge is quite likely to deter or discourage many defendants from accepting the offer of counsel despite the gravity of the need for such representation as emphasized by the [Supreme] [C]ourt in *Gideon....*"
>
> We have concluded that this reasoning is wide of the constitutional mark.

*Id.* at 51–52, 94 S.Ct. at 2124 (alterations in original) (quoting *Allen,* 455 P.2d at 144). In reaching this conclusion, the Court observed that the burden of paying for counsel is in no sense unique to the indigent:

> We live in a society where the distribution of legal assistance, like the distribution of all goods and services, is generally regulated by the dynamics of private enterprise. A defendant in a criminal case who is just above the line separating the indigent from the nonindigent must borrow money, sell off his meager assets, or call upon his family or friends in order to hire a lawyer. We cannot say that the Constitution requires that those only slightly poorer must remain forever immune from any obligation to shoulder the expenses of their legal defenses, even when they are able to pay without hardship.

*Id.* at 53–54, 94 S.Ct. at 2125.

The dissent of Justice Marshall, joined in by Justice Brennan, in *Fuller,* tends to highlight what was decided in that case. Justice Marshall pointed out that in Oregon ordinary civil judgment debtors may not be imprisoned for failing to pay their debts, whereas a recoupment judgment debtor was subject to imprisonment. This difference in treatment rendered Oregon's recoupment statute unconstitutional in Justice Marshall's opinion. *Id.* at 61, 94 S.Ct. at 2128. In view of this conclusion, Justice Marshall declined to rule on Fuller's argument that "some other defendant's knowledge that he may have to reimburse the state for providing him legal representation might impel him to decline the services of an appointed counsel and thus chill his Sixth Amendment right to counsel." *Id.* at 61 n. 2, 94 S.Ct. at 2128 n. 2. Justice Marshall observed:

> In any event, in my view such a claim could more appropriately be considered by this Court in the context of an actual case involving a defendant who, unlike petitioner, had refused appointed counsel and contended that his refusal was not a knowing and voluntary waiver of his Sixth Amendment rights because it was based upon his fear of bearing the burden of a debt for appointed counsel or upon his failure to understand the limitations the State imposes on such a debt.

*Id.*

Any effort to summarize the principles of law established by *James* and *Fuller* is best accompanied by the admonition made by the Court itself in *James* that given the wide variety of recoupment statutes, "any

broadside pronouncement on their general validity would be inappropriate." 407 U.S. at 133, 92 S.Ct. at 2030. Nonetheless, respect for the Court, and recognition that its ability to fully expound on all the law within its jurisdiction is necessarily limited, require that subordinate courts attempt to generalize and synthesize legal propositions based on the Court's opinions. With this in mind, we conclude that *James* and *Fuller* together stand for the following propositions: Recoupment systems in which the means of collecting defense costs are significantly more onerous and less protective of debtors' interests than those available for the collection of private debts are generally invalid. However, systems containing the significantly more onerous power to condition freedom from incarceration on payment of recoupment are not invalid so long as they contain safeguards designed to ensure that only those who will be able to pay are required to pay. Finally, the general "chilling" argument—that requiring repayment of defense costs is per se unconstitutional because it may deter some indigents from accepting the services of counsel—has been rejected.

Although we conclude that *James* and *Fuller* do not require a prior determination of ability to pay in a recoupment system which treats recoupment judgment debtors like other civil judgment debtors, a number of cases decided by lower federal courts and state courts contain broad language from which such a requirement might be inferred. Judge Pengilly cited one such case, *Simmons v. James,* 467 F.Supp. 1068, 1072–80 (D.Kan. 1979), *aff'd sub nom. Olson v. James,* 603 F.2d 150 (10th Cir.1979). In *Simmons,* the court stated as a general requirement that "the court may not order a convicted defendant to pay unless he 'is or will be able to pay.'" 467 F.Supp. at 1075. However, the actual statutory scheme under review in *Simmons* authorized a recoupment judgment as a condition of probation. *Id.* at 1070, 1075, 1079. *Simmons* is thus distinguishable, as Criminal Rule 39 recoupment judgments are merely civil judgments, nonpayment of them has no correctional consequences, and nonpayment does not give rise to contempt proceedings.

Additional cases cited by appellees which contain general language that recoupment judgments must be preceded by a determination of the defendant's ability to pay are also distinguishable on the same basis as *Simmons.* For example, in *Fitch v. Belshaw,* 581 F.Supp. 273, 275–76 (D.Or.1984), the court struck down an Oregon statute which allowed recoupment judgments to be entered without adequate procedures to ensure that defendants would be able to repay without hardship. The statute contained discriminatory enforcement features which provided that debtors could have their driver's licenses revoked and were subject to arrest if they did not pay. Similarly, in *State v. Lopez,* 175 Ariz. 79, 82, 853 P.2d 1126, 1129 (App.1993), the Arizona Court of Appeals stated that failure to first ascertain the defendant's financial resources and the burden recoupment would place on the defendant constituted "fundamental error." However, the trial court in *Lopez* had made repayment of the recoupment order a condition of probation. *Id.* at 80, 853 P.2d at 1127. *Lopez* is distinguishable on another ground as well. The applicable Arizona rule required prior consideration of a defendant's ability to pay. Thus, the court had no occasion to rule that such consideration was constitutionally required.

*People v. Amor,* 12 Cal.3d 20, 114 Cal. Rptr. 765, 523 P.2d 1173 (1974), is cited by appellees as inferentially standing for the proposition that recoupment systems are not constitutional unless they are based on the defendant's ability to pay. The California court's opinion in *Amor,* however, does not contain any general statements that a prior determination of a defendant's ability to pay is a constitutional prerequisite to entry of a judgment for recoupment. As in *Lopez,* such a statement would have been dicta because the California statute under review required a determination of the defendant's present ability to pay prior to entering an order of recoupment. *Amor,* 523 P.2d at 1175 n. 1.

Moreover, *Amor* suggests that a prior determination of ability to pay is not required where a recoupment judgment is only civil in character and not part of the "sentencing process." *Id.* 114 Cal.Rptr. at 768, 523 P.2d at 1176. The *Amor* court distinguished its

prior decision, *In re Allen*, 71 Cal.2d 388, 78 Cal.Rptr. 207, 455 P.2d 143 (1969),[12] on three grounds. In *Allen*, (1) there was no prior determination of the defendant's ability to pay, (2) there was no warning to the defendant that she might be liable to pay, and (3) the defendant could have gone to jail if she had failed to pay as payment was a condition of probation.[13] *Id.* The court went on to conclude that none of these grounds were present in *Amor*. However, the court indicated that the absence of the latter two grounds would suffice to render the system constitutional. The court contrasted *Allen* with its 1970 case *In re Ricky H.*, 2 Cal.3d 513, 86 Cal.Rptr. 76, 468 P.2d 204 (1970), in which there was no prior determination of an ability to pay (or threat that probation would be withheld if payment was not made) but there was a warning that payment would be required:

> In *In re Ricky H.*, [2 Cal.3d 513, 86 Cal.Rptr. 76] 468 P.2d 204, we distinguished the matter there involved from *Allen*, saying . . .: "The considerations which impelled us to strike down the probation condition in *Allen* do not require us to invalidate section 903.1. Unlike the petitioner in *Allen*, petitioner herein [a minor] was advised in advance that his father could be charged with the cost of appointed counsel, and petitioner does not claim that the fee involved was unreasonable or excessive. Moreover, in the instant case no unfair or unnecessary threat was made to withhold probation or other privileges unless counsel fees were reimbursed." The same factors are here applicable.

Additionally, determination of the conditions of probation constitutes part of the sentencing process. In *Allen*, therefore, the order directing the petitioner to reimburse the county for the cost of counsel fees was made as part of the sentencing process. As pointed out by this court in *Allen*, "[T]he introduction of budgeting considerations could well divert or dilute the attention which the judge must give to the specific considerations which the law requires him to have in mind in the sentencing process." The determination in the present case, however, was made only after conclusion of the criminal proceedings. Hence, any consideration to "budgeting" would not have occurred until the sentencing process had been completed.

*Id.* 114 Cal.Rptr. at 768, 523 P.2d at 1176 (citations omitted).

Neither Judge Pengilly nor appellees have referred us to any cases in which a recoupment system which results merely in a civil judgment subject to the normal exemptions applicable generally to civil judgments has been held unconstitutional, based either on the system's failure to require an advance determination of ability to pay or on any other ground. We are aware of two cases in which such systems have been approved.

In *Wicks v. City of Charlottesville*, 215 Va. 274, 208 S.E.2d 752, 756–57 (1974), *appeal dismissed for want of a substantial federal question*, 421 U.S. 901, 95 S.Ct. 1548, 43 L.Ed.2d 769 (1975), the Supreme Court of Virginia upheld Virginia's recoupment statute against a challenge based on right to counsel grounds. The statute, Code of Virginia § 14.1–184.1, currently codified as § 19.2–163, provided for the automatic taxation against a convicted defendant of the amount allowed by the court as payment for the attorney appointed as defense counsel. The amount so taxed was docketed as a judgment. The statute did not call for a prior determination of the defendant's ability to pay. The Virginia Supreme Court, adverting to the statement in *Fuller* that "only those who actually become capable of repay-

---

**12.** *In re Allen* was relied on by Judge Pengilly. Its rationale was rejected by the United States Supreme Court in *Fuller*. 417 U.S. at 51–52, 94 S.Ct. at 2124.

**13.** The *Amor* court stated:

> *Allen*, however, is distinguishable from the present case. In *Allen*, there is justification for concluding that the petitioner would have been penalized for exercising a constitutional right, because not only would she have been liable for payment of the entire fee paid to counsel for representing her, without a finding that she had the financial ability to make payment and with no warning that she might be held so liable, but she could have been imprisoned if she failed to pay the fee, payment thereof being one of the conditions of her probation.
>
> 114 Cal.Rptr. at 767–68, 523 P.2d at 1175–76.

ing the state will ever be obliged to do so," *Wicks,* 208 S.E.2d at 756, observed that general exemptions available to civil debtors were available to debtors under the recoupment statute and were adequate to protect them from hardship. The court stated:

It is entirely proper, and a constitutional requisite, that an indigent defendant be represented by court-appointed counsel. However, we can perceive no valid reason why, if the defendant is convicted, the cost of such representation should not be taxed as a part of the cost of the prosecution, treated as any other debt and collected of the convicted defendant at a later date if and when he becomes able to pay. The Code of Virginia abounds with statutes providing debtors, judgment and otherwise, with exemptions from execution, attachment, garnishment and distress. These statutes afford equal treatment and are adequate to protect any debtor from hardship, and from oppression or overreaching by a creditor. They are not discriminatory and do not penalize any judgment debtor of the Commonwealth.

*Id.* 208 S.E.2d at 756–57 (citations omitted).

*Alexander v. Johnson,* 742 F.2d 117 (4th Cir.1984), involved a challenge to the practice of North Carolina's parole commission which required certain inmates to make restitution for the costs of court-appointed counsel as a condition of parole. Of importance to the present case is what the Fourth Circuit said in dicta concerning North Carolina's separate statutory system for civil recoupment of fees. That system, reflected in General Statutes of North Carolina § 7a–455(b), requires the automatic entry of judgment against a convicted defendant for the costs of court-appointed counsel. No prior determination of ability to pay is made. The Fourth Circuit spoke approvingly of this system, stating:

North Carolina's program for civil recoupment of fees, though not directly attacked here, possesses the essential characteristics of the Oregon system upheld in *Fuller v. Oregon.* The legal obligation to repay the state for the costs of court-appointed counsel does not arise until after the defendant has been found guilty of the charged offense. To enforce this obli-

gation, the amount the defendant owes must be determined in an independent proceeding, reduced to judgment, and collected through the same procedures used by other judgment creditors. Finally, the defendant is allowed to shelter a substantial portion of his assets from attachment if the state executes on its judgment, and to protect his wages from garnishment to the extent they are necessary for his and his family's support. The combined effect of these various civil collection protections is that the defendant will never be forced to repay the state for court-appointed counsel as long as he remains impoverished.

*Id.* at 125, n. 10 (citations omitted).

Thus, there are authorities which have approved systems like Alaska's, which provide nondiscriminatory recoupment judgments without a prior determination of the ability of the defendants to pay. In addition, there are a number of authorities which have held that no prior determination of a defendant's ability to pay is required in systems where jail is a possible consequence of nonpayment, so long as there is an opportunity to establish inability to pay before the jail sanction is imposed. In such systems recoupment judgments may be paid by defendants motivated by the coercive force of the jail sanction, or they may be collected involuntarily by other means. Thus, these cases necessarily reflect the view that a determination of ability to pay prior to entry of a recoupment judgment is not constitutionally required.

One such case is *State v. Kottenbroch,* 319 N.W.2d 465 (N.D.1982). In this case the trial court deferred imposition of sentence conditioned on repayment of the defendant's court-appointed attorney's fees. North Dakota's recoupment statute did not provide for a prior judicial determination of an indigent's ability to pay and did not explicitly permit making payment of recoupment a condition of a suspended sentence. The North Dakota Supreme Court held that so conditioning a suspended sentence was within the general power of the trial court. The court further held that a prior determination of the defendant's future ability to pay was not required by *Fuller,* so long as the judgment debtor had the opportunity to present an inability to

pay defense before his probation was actually revoked. *Kottenbroch,* 319 N.W.2d at 473. In reaching this conclusion the court stated:

> The third argument made by Kottenbroch is that the North Dakota recoupment statute is constitutionally infirm because it does not have the safeguards of the Oregon statute which survived constitutional challenge in *Fuller.* It is true that the statute in question does not provide the many safeguards found in the Oregon statute. However, our reading of *Fuller* and *James* brings us to the conclusion that a statute need not provide all the safeguards of the Oregon statute. Instead, it only needs to be fashioned so that it does not invidiously discriminate between an indigent defendant who becomes a judgment debtor by virtue of his retention of a court-appointed attorney and a non-indigent defendant or other judgment debtor. Our recoupment statute, as previously construed herein, allows an indigent defendant the same exemptions any other person is entitled to. Further, as previously indicated herein, no probation can be revoked simply because the probationer is unable to pay the costs of his court-appointed counsel. We therefore conclude that North Dakota's recoupment statute does not invidiously discriminate between an indigent defendant and a non-indigent defendant or other judgment debtor.

*Id.*

Similarly, in *State v. Crawford,* 248 Kan. 42, 804 P.2d 1385 (1991), the defendant was ordered to reimburse the state for court-appointed counsel as a condition of probation. In entering this order the trial court did not consider defendant's financial resources or her ability to make repayment. *Id.* 804 P.2d at 1390. The Kansas Supreme Court held that such a determination was not necessary at the time the recoupment order was entered. Instead, it was sufficient that the defendant have the opportunity under the Kansas system to show that she was "not wilfully in default in the payment at any

time." To the same effect is *Basaldua v. State,* 558 S.W.2d 2, 7 (Tex.App.1977).

Based on *James* and *Fuller* and the authorities reviewed above, we are persuaded that Alaska's recoupment system does not violate the right to counsel guaranteed by the Sixth Amendment to the United States Constitution. Recoupment judgments are non-discriminatory and there are no correctional consequences if payment is not made. The same protections against hardship available to civil debtors provided in the exemption act are available to recoupment debtors. Moreover, recoupment debtors have the additional right to petition the court for reduction or remission of a judgment based on a showing of manifest hardship to the debtor or members of the debtor's immediate family. Finally, the debtor is notified at the outset of the criminal proceedings of the possibility of a recoupment judgment and given an opportunity to challenge entry of the judgment before it is entered.

We reach the same conclusion with respect to the right to counsel expressed in article I, section 11 of the Alaska Constitution for the same reasons. Appellees argue that the system "chills" indigents' exercise of this right. While *Fuller* rejects this argument for Sixth Amendment purposes, *see* 417 U.S. at 51–52, 94 S.Ct. at 2124, it is appropriate to address it at greater length with respect to the state constitutional guarantee.[14]

The argument that recoupment systems are unconstitutional because they unduly deter indigents from using counsel is, in its most basic form, an argument that recoupment systems are per se unconstitutional. Theoretically, pricing any service will deter at least some potential consumers from using that service. Since all recoupment systems require that at least some indigents pay for legal services, all carry the risk that some will be deterred from accepting counsel.

Nonindigents who must pay for counsel may choose to forego counsel because they believe that the benefits of counsel's service are outweighed by its costs. The fact that our market system forces nonindigents to

---

14. The right to counsel under the Alaska Constitution is more expansive in some of its applications than the corresponding right under the Sixth Amendment to the United States Constitution. *Resek v. State,* 706 P.2d 288, 291 n. 11 (Alaska 1985).

make such a choice has never been regarded as a deprivation of the right to counsel, even though the fees incurred in serious felony cases may exceed all the assets of all but the wealthiest defendants. An indigent's choice as to whether or not to accept appointed counsel, given the eventual cost of counsel under Criminal Rule 39, is not different in kind from the economic choice which must be made by a nonindigent accused of crime. There is no principled way to say that the burden placed on the indigent is unconstitutional while that placed on the nonindigent is constitutional. This is the rationale suggested by *Fuller, see* 417 U.S. at 51–52, 94 S.Ct. at 2124, and stated by the California Supreme Court in *Amor,* 114 Cal.Rptr. at 768, 523 P.2d at 1176:

> There is no more reason to suppose that an indigent defendant will refuse counsel because he may later be ordered to pay his counsel fees, to the extent it is determined he has the financial ability to do so at the conclusion of the criminal proceedings, than there is to suppose that some defendants who are not indigent will refuse counsel because of an unwillingness to incur a counsel fee. It is quite possible that a defendant who would not qualify as an indigent may have such limited resources, or restrict himself to such an extent with respect to the expenditure of his funds, that the factor of liability for counsel fees might prompt him, in a case where counsel is not required, to enter a guilty plea in order to save counsel fees; but if he elects to enter a guilty plea for that reason, such election, based largely on economic factors, could nevertheless not be said to result in his being deprived of the right to counsel. The option to be represented by counsel would have been his, with the right to give such priority as he wished to the economic or other factors involved.

Appellees argue, however, that under Criminal Rule 39 indigents are more likely than nonindigents to reject the services of counsel because the economic consequences of accepting counsel are relatively greater than the cost to nonindigents of hiring counsel:

> A middle class defendant may have to choose between $1000 for a trip to Hawaii and $1000 to have a lawyer handle a DWI case. By contrast, an indigent defendant has to choose between life's necessities and a lawyer. This is a fundamentally different situation. What is a legitimate and noncoercive choice to require a middle class person to make may be unfairly coercive when imposed on an indigent.

We agree that a recoupment system which resulted in indigents refusing counsel at a significantly higher rate than nonindigents would be constitutionally suspect. This could indicate, to use appellees' terms, that the system is imposing unfairly coercive choices on indigents. However, no evidence has been presented that this is occurring.[15]

## III. *RIGHT TO TRIAL BY JURY*

Judge Pengilly concluded that Criminal Rule 39 violates article I, section 16 of the Alaska Constitution, which provides: "In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law." Appellees defend this conclusion, arguing that a civil judgment entered under Rule 39 is akin to an action for attorney fees, which was an action at law, triable to a jury, under the common law. Therefore, they conclude that Rule 39 violates the right to a jury trial whenever the judgment is potentially greater than $250.

We do not consider this question ripe for review. There is no indication in the record or by the parties that any of the appellees asked for and was denied a trial by jury. Rule 39 does not specifically prohibit trial by jury on Rule 39 claims. Therefore, even if trial by jury is appropriate, no cause would exist to strike the rule. We will defer ruling on whether there is a right to trial by jury in

---

15. Court rules, like statutes and regulations, are presumptively constitutional and the burden of proving unconstitutionality is on the party challenging them. *Anchorage v. Anchorage Police Dep't Employees Ass'n,* 839 P.2d 1080, 1083 (Alaska 1992); *Citizens for the Preservation of Kenai River v. Sheffield,* 758 P.2d 624, 625 (Alaska 1988); *Bonjour v. Bonjour,* 592 P.2d 1233, 1237 (Alaska 1979).

proceedings for judgment in excess of $250 under Criminal Rule 39 until the issue is properly before us.

## IV. EQUAL PROTECTION

Judge Pengilly ruled that Criminal Rule 39 deprives indigents of "equal rights, opportunities, and protection under the law" as guaranteed them under article I, section 1 of the Alaska Constitution. Appellees support and expand this ruling, arguing that the federal right to equal protection of the law guaranteed by the Fourteenth Amendment of the United States Constitution is also violated. Appellees argue in general that Criminal Rule 39 provides "indigents subject to judgments for attorney's fees ... [with] a procedure for resolving factual disputes that has far fewer protections than the procedures available to more affluent defendants who dispute the fees charged by their private attorneys." Appellees point out that if an individual with the resources to hire a private attorney has a dispute with the attorney, the individual may refuse to pay and take the attorney to fee arbitration under Alaska Bar Rules 34–40 or require the attorney to establish the amount of fees due in court, and that until these procedures are complete, no judgment is entered. In contrast, under the procedures established by Criminal Rule 39, the court initiates the proceeding, judgment is automatic unless the indigent defendant successfully objects, and a hearing is not required in all cases.

### A. Alaska Equal Protection Analysis

■ This court has adopted a sliding-scale approach to equal protection analysis under article I, section 1 of the Alaska Constitution. *State v. Erickson*, 574 P.2d 1, 12 (Alaska 1978). Under this approach, we must first determine what weight to afford the interest impaired by the challenged enactment. *Alaska Pacific Assurance Co. v. Brown*, 687 P.2d 264, 269–70 (Alaska 1984).

■ Appellees claim that the interest impaired by the classification created by Rule 39 is the right of indigent defendants to access to the courts. They rely on *Patrick v. Lynden Transport, Inc.*, 765 P.2d 1375 (Alaska 1988), in which this court held that a statute requiring nonresident plaintiffs to post a bond in order to bring suit in the state's courts implicated a right of access to the courts and was an "important" right on Alaska's sliding scale. *Id.* at 1379. We therefore subjected the statute to "close scrutiny." [16] The State responds that indigents are not denied access to the courts, but are only afforded different procedures, and that therefore *Patrick* is inapplicable.[17]

The bond requirement at issue in *Patrick* imposed an obstacle to initial entry to the court system. 765 P.2d at 1377. Absent the resources to post bond, nonresident plaintiffs could not bring an action in an Alaska court. *Id.* In contrast, Criminal Rule 39 does not prevent entry to the courts for resolving disputes over the reasonableness of fees. It does, however, provide a different procedure for the determination of the amount owed and the entry of judgment than that available to those who retain an attorney privately. Therefore, the interest impaired by the clas-

**16.** Appellees also argue that heightened scrutiny is required because Rule 39 discriminates against not only the poor but also against racial and ethnic minorities, because they are disproportionately represented among both the poor and the criminally convicted. This argument is without merit. Rule 39's civil judgment procedures apply only to those who use appointed counsel and are convicted. The fact that this class is uniformly poor and possibly disproportionally minority is incidental to the bases for the classification: use of the service and conviction of a crime.

**17.** The State characterizes the interest involved as a money judgment and relies on this court's holding in *State v. Anthony*, 810 P.2d 155, 157 (Alaska 1991), that only minimum scrutiny is required in reviewing statutes which affect an individual's right to a permanent fund dividend. Appellees' equal protection challenge focuses on the procedures by which a judgment is obtained, not on the judgment itself. The interest implicated, therefore, is not an indigent defendant's interest in the money she might lose through the judgment, but in the safeguards afforded her with respect to the judgment. The fact that these safeguards only protect against an economic loss, however, is one factor in weighing their importance. *See, e.g., Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 359 (Alaska 1988) ("Access to the courts is not an independent right"; its importance is dependent on the rights which are sought to be protected through such access).

sification is the criminal defendant's interest in these particular procedures. This interest is less important than *Patrick*'s interest in access to the courts, so lesser scrutiny is appropriate. This is in accordance with prior decisions of this court which consider equal protection challenges to unique procedural matters under a low level of scrutiny. *See Turner Constr. Co. v. Scales*, 752 P.2d 467, 471 (Alaska 1988) (analyzing challenge to statute of repose under fair and substantial relationship test); *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 358 (Alaska 1988) (applying "relatively low level of scrutiny" to equal protection challenge to mandatory pre-trial review of medical malpractice claims).

On review at the low end of our sliding scale, the challenged provisions of Criminal Rule 39 need only serve a legitimate purpose and be fairly and substantially related to the accomplishment of that purpose. *State, Dep't of Revenue v. Cosio*, 858 P.2d 621, 629 (Alaska 1993). It is clear that the procedures of Rule 39 meet these requirements.

■ Although the purpose of requiring reimbursement by the procedures of Rule 39 is not stated in the rule, the State contends that the purpose "is to obtain partial repayment for the cost of defending indigent criminal defendants." Appellees accept this statement of the general purpose of the rule "for the purposes of discussion" and concede that it is probably legitimate. The State further contends that the purpose of providing only the procedures of Rule 39 "is to achieve that end [repayment] with administrative efficiency while protecting the rights of the criminal defendants."[18]

We hold that both the general purpose of Rule 39 and the particular reason for providing only limited procedures are legitimate. Efficient collection is a legitimate reason for providing different procedures in different contexts generally, and especially for not providing indigent defendants with the same procedures afforded private clients involved in fee disputes. Fee disputes between a private attorney and client may involve many issues, including the reasonableness of the

hourly fee, the actual hours expended, the reasonableness of expending these hours, and interpretation of the contract between the attorney and the client. In contrast, under Rule 39, the amount of the fee in most instances will be determined by the schedule, and the range of possible disputes is quite narrow. Equally detailed procedures therefore are unnecessary.

Finally, the means employed by Rule 39 are substantially related to the purpose of fair but efficient collection. The procedures of Rule 39 apply only to individuals who receive appointed counsel and whose obligation to pay for that counsel is limited and subject only to a narrow range of possible disputes. This class is sufficiently differently situated from the class of individuals obligated to pay for private counsel that different procedures are appropriate. Moreover, Rule 39 does not prevent more detailed procedures from being utilized if more complex disputes emerge.

For these reasons, Criminal Rule 39 does not violate the equal protection guarantee of the Alaska Constitution.

## B. *Federal Equal Protection Analysis*

■ The United States Supreme Court has examined equal protection challenges to recoupment statutes under the rational relationship test. *See Fuller*, 417 U.S. at 49, 94 S.Ct. at 2122 ("Our task is merely to determine whether there is 'some rationality in the nature of the class singled out.'") (quoting *Rinaldi v. Yeager*, 384 U.S. 305, 308, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966)); *Strange*, 407 U.S. at 140, 92 S.Ct. at 2034 (stating that requirement of "rationality" in classification was not met). Although *Strange* involved a challenge to a recoupment statute's denial of execution exemptions and not to the procedures employed in reaching the judgment, use of the rational relationship test is proper. There is no suspect class or fundamental right at issue. Appellees apparently concede that the rational relationship test is appropriate, arguing that "Rule 39 has

---

**18.** Appellees apparently agree that this is the purpose for the limited procedures of Rule 39, as they state: "Rule 39 is a streamlined system,

obviously intended to maximize revenue while minimizing administrative expenses."

no rational relationship to a legitimate governmental interest."

As discussed above, the purpose of Rule 39's classification is legitimate. The means chosen are rationally related to that end, in that more efficient procedures are justified by the simplified issues at stake. *See Amor,* 114 Cal.Rptr. at 772, 523 P.2d at 1180 (holding that recoupment statute did not violate equal protection despite providing different procedures than those available to other debtors). Criminal Rule 39 therefore does not violate the federal constitutional right to equal protection.

## V. *CONCLUSION*

Criminal Rule 39 does not conflict with the right to counsel guaranteed by the Sixth Amendment of the United States Constitution and article I, section 11 of the Alaska Constitution. Judgments under the rule are civil judgments subject to the same laws and rules which govern other civil judgments. They do not have any sentencing or correctional consequences. The judgments are low compared to the actual cost of legal services; the exemption act and the remission power under the rule prevent collection in hardship cases. An advance determination of a defendant's ability to pay is not required. Although it is to be expected that some defendants will refuse the services of appointed counsel rather than incur a Criminal Rule 39 judgment, that is an economic choice similar to the choice made by a nonindigent who decides to forego counsel for economic reasons.

We decline to address the right to trial by jury under Criminal Rule 39 as no appellee has asked for and been denied trial by jury and the question does not otherwise affect the constitutionality of the rule.

Criminal Rule 39 also does not violate an indigent defendant's right to equal protection under the Alaska Constitution or the Fourteenth Amendment by providing special procedures for entry of judgment, because these procedures are substantially related to a legitimate state interest.

The decisions of the trial courts in the consolidated cases, finding Criminal Rule 39 unconstitutional, are REVERSED.

BRYNER, J. Pro Tem. dissents, joined by RABINOWITZ, J., as to parts I, II and III.

## APPENDIX A

Alaska Statute 18.85.120(c) provides:

(c) Upon the person's conviction, the court may enter a judgment that a person for whom counsel is appointed pay for services of representation and court costs. Enforcement of a judgment under this subsection may be stayed by the trial court or the appellate court during the pendency of an appeal of the person's conviction. Upon a showing of financial hardship, the court (1) shall allow a person subject to a judgment entered under this subsection to make payments under a payment schedule; (2) shall allow a person subject to a judgment entered under this subsection to petition the court at any time for remission, reduction, or deferral of the unpaid portion of the judgment; and (3) may remit or reduce the balance owing on the judgment or change the method of payment if the payment would impose manifest hardship on the person or the person's immediate family. Payments made under this subsection shall be paid into the state general fund.

Alaska Criminal Rule 39 provides:

(a) Informing Defendant of Right to Counsel. The court shall advise a defendant who appears without counsel for arraignment, change of plea, or trial of the right to be represented by counsel, and ask if defendant desires the aid of counsel. The court shall not allow a defendant to proceed without an attorney unless defendant understands the benefits of counsel and knowingly waives the right to counsel.

(b) Appointment of Counsel for Persons Financially Unable to Employ Counsel.

(1) If defendant desires the aid of counsel but claims a financial inability to employ counsel, the court or its designee shall determine whether defendant is an "indigent person," as defined by statute, by placing defendant under oath and asking

about defendant's financial status, or by requiring defendant to complete a signed sworn financial statement. The court shall order defendant to execute a general waiver authorizing release of income information to the court. The court may require defendant to attempt to arrange private representation before the court makes a final determination on indigency.

(2) Before the court appoints counsel for an indigent defendant at public expense, the court shall advise defendant that defendant will be ordered to repay the prosecuting authority for the cost of appointed counsel, in accordance with paragraph (d) of this rule, if the defendant is convicted of an offense. The court may enter such orders as appear reasonably necessary to prevent defendant from dissipating assets to avoid payment of this cost.

(3) If the court or its designee determines that defendant is an "indigent person," the court shall appoint counsel pursuant to Administrative Rule 12 and notify counsel of the appointment.

(4) In the absence of a request by a defendant otherwise entitled to appointment of counsel, the court shall appoint counsel unless the court finds that defendant understands the benefits of counsel and knowingly waives the right to counsel.

(5) If the trial court denies defendant's request for appointed counsel, defendant may request review of this decision by the presiding judge of the judicial district by filing a motion with the trial court within three days after the date of notice, as defined in Criminal Rule 32.3(c), of the denial. The trial court shall forward the motion, relevant materials from the court file, and a cassette tape of any relevant proceedings to the presiding judge. The presiding judge or his or her designee shall issue a decision within three days of receipt of these materials.

(c) Costs of Appointed Counsel.

(1) Entry of Judgment.

(A) Upon conviction of an offense, revocation of probation, denial of a motion to withdraw plea, and denial of a motion brought under Criminal Rule 35.1, the court shall prepare a notice of intent to enter judgment for the cost of appointed counsel in accordance with paragraph (d) of this rule, provide a copy of the notice to defendant, and order defendant to apply for permanent fund dividends every year in which the defendant qualifies for a dividend until the judgment is paid in full.

(B) Defendant may oppose entry of judgment by filing a written opposition within 10 days after the date of notice, as defined in Criminal Rule 32.3(c), of the court's intent to enter judgment. The opposition shall specifically set out the grounds for opposing entry of judgment. The prosecuting authority may oppose the amount of the judgment by filing a written opposition within the same deadline.

(C) If no opposition is filed within the time specified in section 39(c)(1)(B), the clerk shall enter judgment against defendant for the amount shown in the notice. If a timely opposition is filed, the court may set the matter for a hearing and shall have authority to enter the judgment.

(D) The judgment must be in writing. A copy of the judgment shall be mailed to defendant's address of record. The judgment shall bear interest at the rate specified in AS 09.30.070(a) from the date judgment is entered.

(2) Collection.

(A) The judgment has the same force and effect as a judgment in a civil action in favor of the prosecuting authority and is subject to execution.

(B) All proceedings to enforce the judgment shall be in accordance with the statutes and court rules applicable to civil judgments. The judgment is not enforceable by contempt. Payment of the judgment may not be made a condition of a defendant's probation. Default or failure to pay the judgment may not affect or reduce the rendering of services on appeal or any other phase of defendant's case in any way. A defendant does not have a right to be represented by appointed counsel in connec-

tion with proceedings under subparagraph 39(c) or any proceedings to collect the judgment.

(C) Upon a showing of financial hardship, the court shall allow a defendant subject to a judgment under this rule to make payments under a repayment schedule. A defendant may petition the court at any time for remission, reduction or deferral of the unpaid portion of the judgment. The court may remit or reduce the balance owing on the judgment or change the method of payment if payment would impose manifest hardship on defendant or defendant's immediate family.

(D) Notwithstanding section 39(c)-(2)(B), a defendant may be held in contempt for failing to comply with an order under this rule to apply for a permanent fund dividend.

(3) Appeal.

(A) If defendant appeals the conviction, enforcement of the judgment may be stayed by the trial court or the appellate court upon such terms as the court deems proper.

(B) If defendant's conviction is reversed, the clerk shall vacate the judgment and order the prosecuting authority to repay all sums paid in satisfaction of the judgment, plus interest at the rate specified in AS 09.30.070(a).

(d) Schedule of Costs. The following schedules govern the assessment of costs of appointed counsel under paragraph 39(c). If a defendant is convicted of more than one offense in a single dispositive court proceeding, costs shall be based on the most serious offense of which the defendant is convicted. If a defendant is otherwise convicted of more than one offense, costs shall be separately assessed for each conviction. For good cause shown, the court may waive the schedule of costs and assess fees up to the actual cost of appointed counsel, including actual expenses.

### Misdemeanors

| | |
|---|---|
| Trial | $500.00 |
| Change of plea | 200.00 |
| Post-conviction relief or contested probation revocation proceedings in the trial court | 250.00 |

### Felonies

| | Class B & C | Class A and Unclassified (Except Murder) | Murder in the 1st and 2nd Degrees |
|---|---|---|---|
| Trial | $1,500.00 | $2,500.00 | $5,000.00 |
| Change of plea after substantive motion work and hearing and before trial commences | 1,000.00 | 1,500.00 | 2,500.00 |
| Change of plea post-indictment but prior to substantive motion work and hearing | 500.00 | 1,000.00 | 2,000.00 |
| Change of plea prior to indictment | 250.00 | 500.00 | 750.00 |
| Post-conviction relief or probation revocation proceeding in trial court | 250.00 | 500.00 | 750.00 |

(e) Review of Defendant's Financial Condition.

(1) The court may review defendant's financial status at any time after appointment of counsel to determine (A) whether defendant continues to be an "indigent person," as defined by statute; or (B) whether defendant was an indigent person at the time counsel was appointed.

(2) If the court determines that defendant is no longer an indigent person, the court may

    (A) terminate the appointment; or

    (B) continue the appointment and, at the conclusion of the criminal proceedings against defendant in the trial court, enter judgment against defendant for the actual cost of appointed counsel, including actual expenses, from the date of the change in defendant's financial status through the conclusion of the trial court proceedings.

(3) If the court determines that defendant was not an indigent person at the time counsel was appointed, the court may

    (A) terminate the appointment and enter judgment against defendant for the actual costs of appointed counsel, including actual expenses, from the date of appointment through the date of termination; or

    (B) continue the appointment and, at the conclusion of the criminal proceedings against defendant in the trial court, enter judgment against defendant for the actual cost of appointed counsel from the date of the appointment through the conclusion of the trial court proceedings.

(4) A defendant may request review of the court's decision to terminate the appointment according to the procedure set out in subparagraph 39(b)(5).

(5) Judgment may be entered against a defendant under this paragraph regardless of whether the defendant is convicted of an offense.

Alaska Appellate Rule 209(b) provides:

(1) In criminal matters the trial court shall authorize appeals at public expense on behalf of defendants who are "indigent," as defined by statute, in accordance with the rules and decisions of the appellate courts of Alaska and where such appeals are required to be provided by state courts by decisions of the Supreme Court of the United States. Where an appeal at public expense is authorized by the trial court, the costs which shall be borne at public expense include those of providing counsel and of preparing a transcript and briefs.

(2) After a trial court has authorized an appeal at public expense, the appellate clerk shall send defendant a written notice and order, to the address provided under Appellate Rule 204(b), that

    (A) advises defendant that, if defendant's conviction is not reversed, defendant will be ordered to repay the prosecuting authority for the cost of appointed appellate counsel, in accordance with the schedule of costs set out in subparagraph 209(b)(7); and

    (B) orders defendant to apply for permanent fund dividends every year in which the defendant qualifies for a dividend until this cost is paid in full.

(3) A defendant authorized to proceed at public expense in the trial court is presumed to be entitled to proceed at public expense on appeal.

(4) The action of the trial court in authorizing or declining to authorize an appeal at public expense is reviewable by a motion in the appellate court, ancillary to the appeal.

(5) Counsel appointed to represent a defendant in the trial court pursuant to Criminal Rule 39 shall remain as appointed counsel throughout an appeal at public expense authorized under this paragraph and shall not be permitted to withdraw except upon the grounds authorized in Administrative Rule 12. An attorney appointed by the court under Administrative Rule 12(b)(1)(B) will be permitted to withdraw upon a showing that either the public defender agency or the office of public advocacy is able to represent defendant on appeal. If an appeal is to be taken, trial counsel will not be permitted to withdraw until the notice of appeal and the documents required to be filed with the appeal by Rule 204 have been accepted for filing by the clerk of the appellate courts.

(6) At the conclusion of the appellate proceeding, the appellate clerk shall enter judgment against defendant for the cost of representation on appeal unless defendant's conviction was reversed by the appellate court. The amount of the judg-

ment shall be determined by reference to the schedule in subparagraph 209(b)(7). Before entering judgment, the clerk shall mail, to the defendant's address of record, a notice that sets out the amount of the proposed judgment. Defendant may oppose entry of the judgment by filing a written opposition within 45 days after the date shown in the clerk's certificate of distribution on the notice. The opposition shall specifically set out the grounds for opposing entry of judgment. The prosecuting authority may oppose the amount of the judgment by filing a written opposition within the same deadline. Criminal Rule 39(c)(1)(D) and (c)(2) shall apply to judgments entered under this subparagraph.

(7) The following schedule governs the cost of representation on appeal:

| Type of Appellate Proceeding | Misdemeanor | Felony |
| --- | --- | --- |
| Sentence Appeal | 250 | 500 |
| Merit Appeal and Appeals from Post–Conviction Relief Proceedings | 750 | 1,500 |
| Combined Merit and Sentence Appeal | 1,000 | 2,000 |
| Other Appellate Actions (Petition for Review, Petition for Hearing, etc.) | 500 | 1,000 |

BRYNER, Justice Pro Tempore, dissenting, joined by RABINOWITZ, Justice, as to parts I, II and III.

## I. INTRODUCTION

I agree with the majority that it is appropriate for the state to recoup costs for services provided to indigent defendants by court-appointed counsel. I further agree that there is nothing impermissible in a recoupment plan that burdens an indigent defendant with the same economic choice that a nonindigent defendant must make. Finally, I agree that it is legitimate for the court to establish procedures that ensure "administrative efficiency" in recouping costs of pro-

viding appointed counsel. And I believe, as does the majority, that the establishment of such procedures can be accomplished without offending Albert's constitutional rights to counsel and equal protection. My major disagreement with the majority centers narrowly on the majority's conclusion that Rule 39 properly accomplishes the legitimate purpose it is meant to serve.[1]

## II. ABILITY TO REPAY

After reviewing *James v. Strange*, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972), *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), and their progeny, the majority concludes that ability to repay is essential to a recoupment plan only when the defendant may be incarcerated for failing to repay. This interpretation neglects the Alaska Constitution. Even if the federal constitution does not require that ability to repay be considered,[2] such consideration must be allowed under the Alaska Constitution.[3]

In ordinary civil matters, of course, it is entirely permissible to enter judgment against a debtor regardless of the debtor's ability to pay. The majority repeatedly insists that a Rule 39 recoupment judgment has no "correctional consequences" and may therefore be treated as an ordinary civil judgment, without considering ability to repay. This assertion is incorrect. A civil judgment entered against an indigent defendant who has just been convicted of a crime can have distinctly different consequences than one entered against an ordinary debtor:

The indigent defendant who is found guilty is uniquely disadvantaged.... A criminal conviction usually limits employment opportunities. This is especially true where a prison sentence has been served. It is in the interest of society and the State that such a defendant, upon satisfaction of the

---

**1.** This appeal arises in the procedural context of Criminal Rule 39, but the issues decided by the court have equal bearing on the related provisions of Appellate Rule 209. The references to Criminal Rule 39 in this dissent are meant to encompass Appellate Rule 209 as well.

**2.** I am not as confident as is the majority that the federal constitution permits a recoupment plan that precludes any prejudgment consideration of ability to repay as a relevant factor in determin-

ing whether and in what amount judgment should be entered. Given my conclusion that such consideration is required under the Alaska Constitution, I do not address the point.

**3.** *Shagloak v. State*, 597 P.2d 142, 144 n. 14 (Alaska 1979) (holding that the Alaska Constitution may provide broader safeguards than the parallel provisions of its federal counterpart); *see also Breese v. Smith*, 501 P.2d 159, 167 (Alaska 1972).

criminal penalties imposed, be afforded a reasonable opportunity of employment, rehabilitation and return to useful citizenship.

*James v. Strange,* 407 U.S. at 139, 92 S.Ct. at 2033.

The unique impact that a civil judgment can have on a convicted offender is plainly a "correctional consequence" in that it directly relates to the sentencing goal of rehabilitation. This sentencing goal finds express recognition in our state constitution. "Under Alaska's Constitution, the principles of reformation and necessity of protecting the public constitute the touchstones of penal administration." *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970) (footnote omitted). Article I, section 12, of the Alaska Constitution declares that "Penal administration shall be based on the principle of reformation and upon the need for protecting the public."

> Multiple goals are encompassed within these broad constitutional standards. Within the ambit of this constitutional phraseology are found the objectives of rehabilitation of the offender into a non-criminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.

*Chaney,* 477 P.2d at 444.

In some cases, entering a recoupment judgment against a defendant who is unable to repay will actively interfere with the sentencing goal of rehabilitation. This is essentially the point that we made in *Karr v. State,* 686 P.2d 1192 (Alaska 1984), when we rejected an argument for allowing sentencing courts to order the payment of restitution as a condition of probation for convicted offenders who have no foreseeable ability to pay:

> If restitution is ordered in an amount that is clearly impossible for the offender to pay, the offender's rehabilitation will be inhibited and not furthered. If the offender is haled into court for nonpayment of restitution ... or if the offender petitions the court ... to avoid this sanction, his reintegration into society will be disrupted. Also, an offender might simply give up and make no payments at all if the restitution ordered is clearly impossible to pay. This could result in the offender's incarceration ... or in his fleeing the jurisdiction to avoid this sanction, neither of which would further the dual goals behind restitution.

*Id.* at 1197 (footnote omitted).[4]

Although the dangers we adverted to in *Karr* were clearly magnified in the context of that case by the possibility of incarceration as a consequence of nonpayment, the absence of incarceration as a potential consequence in a recoupment situation merely reduces the extent of these dangers; it does not dispel them. In some circumstances, it will be predictable that the pendency of a judgment for a sum that would be impossible to pay might be disruptive of a defendant's reintegration into society and might encourage the defendant to "simply give up." When a court foresees this risk and deems rehabilitation to be a prominent sentencing goal in the case before it, the interests of the defendant and

---

4. In this regard, there is a certain irony in the majority's reliance on cases holding that repayment may be imposed as a condition of probation regardless of ability to repay, as long as probation cannot be revoked when failure to repay results from financial inability. *See, e.g., State v. Kottenbroch,* 319 N.W.2d 465 (N.D.1982); *State v. Crawford,* 248 Kan. 42, 804 P.2d 1385 (1991). For the reasoning of these cases is precisely the reasoning this court rejected in *Karr.* These cases are also readily distinguishable on a more substantive ground. If the sentencing courts in *Kottenbroch* and *Crawford* believed that a condition of probation requiring repayment would interfere with a defendant's rehabilitation, the courts were under no obligation to order repayment as a condition of probation and presumably would not have done so. The sentencing courts thus had exactly the scope of discretion that I would hold to be required under the Alaska Constitution: the discretion to *consider* a defendant's ability to repay prior to entering a recoupment judgment.

society alike will be served if the court forbears entering the recoupment judgment.[5]

Given the central role of reformation as a touchstone of penal administration under the Alaska Constitution, I would hold that our state constitution forbids a recoupment plan that provides courts no authority to engage in (and indigent defendants no right to request) prejudgment consideration of ability to repay.

## III. RIGHT TO COUNSEL AND EQUAL PROTECTION

The Sixth Amendment to the United States Constitution expressly guarantees all persons accused of crime the right to be assisted by counsel. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), held the Sixth Amendment's guarantee to be a fundamental right, applicable to the states under the Fourteenth Amendment's Due Process Clause; *Gideon* further held the Sixth and Fourteenth Amendments to require states to provide court-appointed counsel upon request to accused persons who cannot afford to retain their own attorneys. As with other fundamental rights expressly secured by the Constitution, an accused's right to the assistance of counsel must be jealously guarded against erosion by rule or statute, even if the rule or statute furthers an otherwise legitimate state interest:

> Whatever might be said of Congress' objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. The question is not whether the chilling effect is "incidental" rather than intentional; the question is whether that effect is unnecessary and therefore excessive.

*United States v. Jackson,* 390 U.S. 570, 582, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138 (1968) (citations omitted).

*Jackson* unambiguously states the standard for resolving Albert's right-to-counsel claim: whether the provisions of Rule 39 "needlessly chill the exercise of [that] basic constitutional right[.]" *Id.*

Albert's right to appointed counsel is protected at a second level by the Equal Protection Clause of the Fourteenth Amendment, which prohibits the irrational imposition of "harsh conditions on a class of debtors who were provided counsel as required by the Constitution[.]" *James v. Strange,* 407 U.S. at 140–41, 92 S.Ct. at 2034. Nor can discriminatory treatment of indigent defendants be justified by the mere fact that their debt is to the state:

> We recognize, of course, that the State's claim to reimbursement may take precedence, under appropriate circumstances, over the claims of private creditors and that enforcement procedures with respect to judgments need not be identical. This does not mean, however, that a State may impose unduly harsh or discriminatory terms merely because the obligation is to the public treasury rather than to a private creditor.

*Id.* at 138, 92 S.Ct. at 2033 (footnote omitted).[6]

---

**5.** In many—perhaps most—cases, the entry of a judgment for costs of appointed counsel against a convicted defendant will have little or no tendency to interfere with rehabilitation, regardless of the defendant's ability to pay. Indeed, even as to a defendant who has no foreseeable ability to repay, a judgment requiring payment of fees for appointed counsel might in some cases have a salutary effect by inculcating in the defendant a sense of responsibility. This is particularly likely to be true under a recoupment rule like Rule 39, which, even in its current form, allows the defendant to claim all normally applicable civil exemptions and to obtain post-judgment relief through a showing of financial hardship. When a judgment for attorney's fees would have no foreseeable negative effect on rehabilitation, I can see no reason to disallow the entry of such a judgment, even against an indigent defendant who has no foreseeable ability to pay. The treat-

ment in such cases would be identical to treatment accorded ordinary civil debtors.

**6.** In practice, any attempt to distinguish between *James'* equal protection analysis and *Jackson*'s unnecessary chilling effect test may involve more form than substance. Given the fundamental nature of the right to counsel and the liberty interest implicated by the needless discouragement of the exercise of the right to counsel, a constitutional challenge to a recoupment plan essentially calls into question the basic fairness of the challenged provision. In this situation, regardless of whether the challenge asserts a violation of equal protection or a direct violation of the right to counsel, "the issue cannot be resolved by resort to easy slogans or pigeonhole analysis, but rather requires a careful inquiry into such factors as 'the nature of the individual

Criminal Rule 39 must be evaluated in light of these standards. Rule 39(b) makes all criminal defendants who are provided court-appointed counsel liable upon conviction for the cost of representation. This liability attaches without regard to an individual defendant's financial ability to repay. The liability automatically attaches in the form of a civil judgment entered without a prior request or demand for payment. Upon a defendant's conviction, the trial court must issue in all cases, *sua sponte*, a notice of judgment.

The amount of the judgment is as automatic as its entry. Under Rule 39(d), the amount of the judgment is not based on services actually received by the defendant; rather, it is selected from a menu of fixed fees pegged to case type and stage at which disposition occurs. The judgment is entered without the right to a trial—jury or nonjury.[7] For that matter, the defendant has no right even to a hearing.[8]

A convicted defendant who receives the notice and is capable of filing a written response within ten days of its issuance may object to it; but the rule does not specify any ground for objection, and, given the automatic nature of the judgment, the majority opinion seems to conclude there is essentially none.[9] Along with the notice of judgment, the trial court must send an order requiring the defendant, if eligible, to apply for permanent fund dividends "until the judgment is paid in full." Rule 39(c)(1)(A). This requirement is imposed upon pain of contempt. Rule 39(c)(2)(D).

Apart from this, the rule requires all defendants who cannot afford to retain counsel to be warned of the consequences of requesting court-appointed counsel—that, upon conviction, they *"will be ordered* to repay ... the cost of appointed counsel, in accordance with paragraph (d) of this rule [the fee schedule]." Rule 39(b)(2) (emphasis added). This warning must be made at the outset of

interest affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose[.]' " *Bearden v. Georgia*, 461 U.S. 660, 666–67, 103 S.Ct. 2064, 2069, 76 L.Ed.2d 221 (1983) (quoting *Williams v. Illinois*, 399 U.S. 235, 260, 90 S.Ct. 2018, 2031, 26 L.Ed.2d 586 (1970)).

7. The majority sidesteps Albert's claim that Rule 39 violates his right to a jury trial by noting that the rule does not expressly preclude a jury trial and that Albert has not requested one. I am tempted to ask how the rule's silence on the right to a jury trial can plausibly be construed to leave the door open to a request when the rule makes no provision for any trial at all. I agree with the majority that Albert's jury trial claim need not be considered. I reach this conclusion, however, because it seems clear that the issue is subsumed by the greater problem of Rule 39's failure to provide for any form of trial or hearing of right.

8. Rule 39(c)(1)(C) states that "[i]f a timely opposition is filed, the court may set the matter for a hearing and shall have authority to enter the judgment." The plain language of the rule seemingly makes the hearing discretionary and vests the court with authority to enter judgment regardless of whether a hearing is held. The rule also appears to create no right to any appeal from the entry of judgment. The majority for the first time today construes the rule to require a hearing in any case in which there is a factual dispute on a material issue and to allow appeals as a matter of course. In the context of Rule 39,

however, it is unclear what a defendant must do to create a factual dispute on a material issue; it is also unclear how a defendant should pursue an appeal, particularly when the recoupment judgment is entered under Appellate Rule 209 by an appellate court. In any event, experience strongly suggests that the majority's interpretation of the rule has not been widely understood. In the years since its adoption, Rule 39 evidentiary hearings have apparently rarely been conducted by trial courts in disputed cases, and I am aware of no attempts to appeal adverse trial court rulings. While the court's current interpretation of the rule may have a salutary effect as to future indigent defendants, it comes too late for litigants who, like Albert, have proceeded through the system before this court's clarifying interpretation. Moreover, future generations of indigent defendants deciding whether to request court-appointed counsel will read the rule (without the assistance of counsel) as it is actually written, not as it has now been interpreted by this court. If the majority agrees that the rule could benefit from clarification, then the clarification should come in the form of an amendment, rather than an opinion interpreting the current version of the rule.

9. Upon a showing of financial hardship, a defendant may secure permission to make periodic payments or may obtain remission, reduction or deferral. Rule 39(c)(2)(C). But these are post-judgment remedies: they are available only to a defendant who is "subject to a judgment" and only cover "the unpaid portion of the judgment." *Id.*

the case—"[b]efore the court appoints counsel," *id.*—prior to any preliminary contact or consultation with counsel. And the court itself is to deliver the message. *Id.*

A unique set of problems emerges from Rule 39's provisions for entry of judgment without the right to a trial or hearing and its related use of a predetermined schedule of fees. To sustain its position that these aspects of Rule 39 do not unnecessarily chill the exercise of the right to appointed counsel and are not conspicuously more onerous than collection procedures applied to civil debtors, the majority points to the obvious difference between Rule 39 and the recoupment statute found unconstitutional in *James v. Strange.*

*James* involved a Kansas statute that precluded convicted defendants against whom recoupment judgments were entered from claiming any of the exemptions commonly allowed civil judgment debtors. This denial of exemptions applied only to recoupment judgments for attorney's fees. The Supreme Court found this provision harsh, discriminatory, and impermissible.

As the majority in the present case points out, Alaska's recoupment rule, in contrast, expressly allows judgment debtors to claim all commonly allowed exemptions. However, the fact that Rule 39 does not discriminate against indigent defendants in precisely the manner found impermissible in *James* does not make it constitutional. There are many ways in which a recoupment rule might arbitrarily "impose ... harsh conditions on a class of debtors who were provided counsel as required by the Constitution[.]" *James,* 407 U.S. at 140–41, 92 S.Ct. at 2034. Yet the majority's scrutiny of Rule 39 proceeds little further than the aspect focused on by *James.* The majority fails to recognize, consider, or justify the other unprecedented aspects of Rule 39 that work to the unique disadvantage of indigent criminal defendants who request appointed counsel.

In no other area of Alaska law that I am aware of is a private or public debtor virtually stripped of the right to a trial—or even the right to a hearing—and subjected upon ten days' notice to the automatic entry of a final civil judgment—all without even the courtesy of a request or demand for payment. This treatment is unique to indigent defendants who are subject to Rule 39, and it is uniquely harsh. Moreover, in no other area of Alaska law does a recipient of state-provided professional services become automatically liable to pay a charge based on an inflexible schedule of arguably arbitrary predetermined fees, without regard to the professional services actually rendered in the specific case. Again, the treatment is unique, and despite the majority's protestations to the contrary, it is uniquely harsh.

Under Rule 39, the indigent defendant who contemplates exercising the constitutionally granted right to appointed counsel is given one choice on a take-it-or-leave-it basis: accept the automatic entry of a judgment in the amount stipulated by the fee schedule set forth in Rule 39(d) or waive the right to counsel.

In an effort to justify this arrangement, the majority repeatedly observes that the fees set by the schedule are intended to be "significantly lower than those charged by private counsel[.]" This implicit assumption that benevolent undercharging occurs is the majority's keystone to support Rule 39's fee schedule and automatic judgment provision. The majority in effect says that, since the fee schedule charges all indigent defendants rates that are clearly only a fraction of the actual price for similar services by a private attorney, there is no need to worry about any individual defendant being charged for services not actually received, no cause for case-by-case determination of services actually rendered, and no factual issue that could conceivably justify a trial or hearing of right before judgment is entered.

The majority's comparison to private counsel fees, however, is misdirected, and its assumption of benevolence is unfounded. Indigent defendants who request appointed counsel do not receive private counsel of their own choice. Instead, they are given agency attorneys and contract defense lawyers who work at a fraction of the cost of private attorneys. A recoupment plan's only legitimate purpose lies in reimbursing the state for actual costs incurred for legal services, "not their equivalent value if privately ob-

tained." *State v. Lopez,* 175 Ariz. 79, 82, 853 P.2d 1126, 1129 (App.1993) (quoting *State v. Keswick,* 140 Ariz. 46, 49, 680 P.2d 182, 185 (App.1984)). The court system thus has no business charging indigent defendants preset rates pegged to the price, or even a fraction of the price, they would otherwise pay on the open market for the attorneys of their own choosing.[10]

When the rates charged by Rule 39(d) are examined in light of available statistics reflecting the average cost the state pays per case for providing public representation rather than by comparison to supposed fees private attorneys would charge for providing equivalent services, the seeming benevolence of the fee schedule quickly evanesces. We are left with a hazy informational void in which predicting whether the schedule will overcharge or undercharge any particular defendant becomes impossible, and in which all prospective recipients of public representation appear to stand an appreciable risk of consenting to a judgment that charges them for more than they will actually receive.

The Alaska Public Defender Agency Fiscal Year 1992 Report appears to contain the most recent readily available reflection of costs of public representation. The report indicates that during fiscal year 1992 the average cost to the Agency of representing its clients amounted to only $453 per case.[11] Of the eighteen fee categories listed in the Rule 39(d) schedule, only four fall below this cost-per-case figure; the rest surpass it. Three of the four fee categories that do not exceed the cost-per-case average entail $250 fees; this is more than half the average cost incurred by the Agency. The fourth below average fee—the least expensive fee that can be charged under the schedule—is the $200 charge for a misdemeanor change of plea, almost half the average cost.

Admittedly, most of the defendants who receive public representation fall into one of the four least expensive fee categories. Thus, the average cost figure plainly does not suggest that Rule 39(d) routinely overcharges all or most defendants. But this is not the point.

Because the average cost-per-case figure falls so close to the minimum charges that can be assessed under the schedule and so far below the fees that the schedule charges for so many of the services routinely provided to indigent defendants, the cost-per-case datum creates significant doubt, on a case-by-case basis, as to whether the fee schedule will overcharge a given defendant. Since the average cost per case is so low, predicting with any degree of confidence that most defendants who request appointed counsel will be undercharged, or that the fee schedule will accurately reflect services actually to be rendered in a given case, becomes impossible.[12]

**10.** Comparing an indigent defendant's overall situation with respect to representation to that of a nonindigent defendant's is fruitful in this regard. A nonindigent defendant who seeks to retain counsel will of course frequently encounter private attorneys who demand fixed-sum fees without regard to services actually to be rendered. But in the private setting, the defendant is free to negotiate with counsel and to shop for an attorney with a more favorable price or better terms. Moreover, the nonindigent defendant will have the ability to choose between retaining and waiving counsel after consulting with counsel about the potential benefits and detriments of these options, and frequently about the potential merits of the case. A nonindigent defendant who retains counsel and does not receive money's worth will have mandatory arbitration available; and before any judgment can be entered for nonpayment of fees, the defendant will be entitled to the full panoply of procedural and substantive rights that attach in all civil cases. And if a marginally situated defendant—one who falls on the financial borderline where the economic

choice of retaining counsel is the most difficult—negotiates with private counsel and finds that fees or terms are too exorbitant, waiver of counsel is not the only available option. If all else fails, the defendant may as a last resort request—and will often be granted—court-appointed counsel.

**11.** 1992 Alaska Pub. Defender Agency Fiscal Year Rep. at 12. There is no information to indicate that cost-per-case figures for the Public Defender Agency have altered significantly since fiscal year 1992. Likewise, while I have found no readily available reports of per-case cost for conflict representation by the Office of Public Advocacy and its contractors, there is little reason to believe that any cost difference would be significant for present purposes.

**12.** The fee schedule set forth in Appellate Rule 209(b)(7) for appellate representation raises even greater concerns. Of eight categories of appellate representation, only one—misdemeanor sen-

Even the lowest scheduled fee might represent a questionable value in many cases. The indigent defendant charged with a first offense DWI who enters a plea of no contest after receiving a half-hour to an hour of an appointed attorney's time and who thereafter receives the standard first offense sentence may have good reason to ask whether the $200 preset charge for a misdemeanor change of plea is in fact a "modest fee" for the services actually rendered. Yet it would not be surprising to find that this is a commonplace scenario.[13]

Hence, the cost-per-case information erodes the majority's tacit premise that the schedule of predetermined fees is a benevolent provision which seldom if ever provides occasion for a reasonable objection. It is crucial to recall that this presumed benevolence is the *sine qua non* of the challenged rule, the essential rationale the majority relies on to support the multitude of procedural shortcuts that dot its recoupment plan.

Remove this keystone, and the rationality of the rule crumbles. Unless the majority opinion can clearly demonstrate that the fee schedule creates no appreciable risk of overcharging indigent defendants, how can it justify a system that automatically enters judgment in the scheduled amount without the right to trial; a system that grants minimal relief—partial remission or time-scheduled payments—only upon post-judgment proof of hardship.

Rule 39's fee schedule and its accompanying procedural shortcuts might be defensible if they were necessary, but they are in fact wholly unnecessary. Witness the fact that no similar treatment is accorded any other class of private or public debtor in Alaska.[14] There is no obvious need to subject indigent defendants to discriminatory treatment of this kind. The majority's vague, if not unfounded references to administrative efficiency hardly demonstrate that such harsh measures are necessary to recoup costs of public representation. There is no evidence in the record to support a conclusion that it would be impractical or inefficient to determine the reasonable cost of services actually rendered on a case-by-case basis and to charge convicted defendants this amount. There is also no evidence or information indicating that the right to a prejudgment trial or hearing would prove impractical, inefficient, or unduly burdensome.

The majority asserts that indigents who are forced to ask for counsel, unlike their nonindigent counterparts who retain counsel, simply have nothing to litigate. This assertion, however, is factually unsupported. Its validity has never been tested; nor can it ever be tested under the current version of Rule 39, since the rule has been designed to allow no reasonable opportunity for indigent

---

tence appeals—entails a charge below the Public Defender Agency's average cost per case. Although it may be safe to speculate that a majority of trial court cases fall into the minimum fee category of Criminal Rule 39(d)—thereby making it unlikely that the schedule routinely overcharges most defendants at the trial level—it seems equally safe to speculate that only a minute segment of appellate cases are misdemeanor sentence appeals falling into the lowest fee category of Appellate Rule 209(b)(7). Hence, to receive appointed counsel on appeal, all but the exceptional appellant is routinely required to pay more than the average per-case cost of representation.

**13.** I certainly do not mean to disparage the level of representation provided by appointed counsel or to suggest that indigent defendants are systematically underrepresented by agencies such as the Public Defender Agency or the Office of Public Advocacy. That agency defense attorneys may frequently be capable of handling cases expeditiously and at low cost reflects the high de-

gree of expertise that they develop in their practice and the efficiency of scale realized by their agencies in handling large volumes of similar cases.

**14.** Although the majority's opinion compares Rule 39 only to treatment accorded private debtors, the Court in *James v. Strange* deemed it germane to compare differences between a recoupment plan's treatment of indigent defendants and the treatment accorded other classes of state debtors:

It may be argued that an indigent accused, for whom the State has provided counsel, is in a different class with respect to collection of his indebtedness than a judgment creditor whose obligation arose from a private transaction. But other Kansas statutes providing for recoupment of public assistance to indigents do not include the severe provisions imposed on indigent defendants in this case.

*James v. Strange,* 407 U.S. at 137, 92 S.Ct. at 2033.

defendants to litigate anything of consequence.[15]

There are other uniquely onerous features of Rule 39 that must be addressed. Foremost are the rule's provisions requiring the court to order all eligible defendants against whom a Rule 39 judgment will be entered to apply for permanent fund dividends and authorizing contempt proceedings for noncompliance with this order. *See* Criminal Rule 39(c)(1)(A) & (2)(D). The majority points to no other area of Alaska law in which recipients of public or private services become automatically liable for the entry of court orders enforceable by contempt that require them to apply for permanent fund dividend payments until their debts are satisfied. The majority also makes no effort to justify this unique aspect of the rule, which is not only harsh and unnecessary, but also economically illogical.[16]

Because the threat to strip indigent defendants of permanent fund dividends upon pain of contempt serves no necessary or even useful function, its only predictable effect will be to discourage legitimate requests for appointed counsel. When these provisions are made known to a prospective recipient of appointed counsel who must decide whether to request an attorney, they will almost inevitably be understood as a threat. This is particularly true, and particularly offensive, given that the threat is apt to come directly from a judge—the official specifically charged by the rule with informing defendants of their duty to repay under Rule 39. Rule 39(b)(2).[17]

Yet another discriminatory, potentially coercive, and entirely unnecessary aspect of

**15.** In this regard, it seems symptomatic of the rule's design that this appeal arose from two cases in which superior court judges thought it necessary to address the constitutionality of Rule 39 *sua sponte*. Given the rule's conscious objective of achieving "administrative efficiency" by eliminating virtually all opportunity for challenging its provisions, the superior court's decision to address the constitutional issues *sua sponte* is entirely defensible.

**16.** A banker who did business in this manner would find survival difficult. As both the state and the majority opinion acknowledge, recoupment judgments will most frequently be entered in amounts significantly lower than the permanent fund dividend, which in past years has hovered just below the thousand dollar mark. Assuming that a defendant against whom a Rule 39 judgment has been entered fails to apply for a permanent fund dividend, the state is deprived of nothing it does not already have: the debt remains in effect, accruing interest and subject to execution; the state retains forever the near-thousand-dollar dividend it would otherwise have paid out. In contrast, when the state coerces the same defendant to apply for the permanent fund dividend, it expends the full amount of the dividend. The state can collect back from the defendant (or sign over to itself) a portion of the dividend (its own money that it just insisted on giving out) equivalent to the amount owed by the defendant, but the defendant will pocket the rest. At a maximum, the defendant returns to the state the entire dividend the state just paid. The recycled money does not go to repay counsel; it merely shifts from the state's permanent fund to its general fund. The state pays out of pocket the administrative costs of disbursing the dividend, and, in collecting the money back, it must cancel a preexisting debt

that it might otherwise have eventually collected with funds not its own. In short, Rule 39(c)(1)(A) and (2)(D) make no sense at all unless the majority perceives some benefit in removing money from the state's permanent fund (where it is available for direct distribution to Alaska citizens), giving most to a convicted defendant who would not otherwise have asked for it, and depositing the fractional remainder in the general fund (where it becomes available to be spent at the pleasure of the legislature).

**17.** Rule 39(b)(2) does not expressly require the court to advise prospective recipients of appointed counsel that they will be ordered to apply for permanent fund dividends and prosecuted for contempt if they fail to do so, but the rule does provide that, "[b]efore the court appoints counsel for an indigent defendant . . ., the court shall advise defendant that defendant will be ordered to repay . . . in accordance with paragraph (d) of this rule[.]" It seems likely that, in providing the advisement required by this provision, many judges will attempt to give defendants a capsule explanation of Rule 39, including its permanent fund provisions.

It is noteworthy that threats of future prosecution can have an especially chilling effect when communicated by a judge during a courtroom proceeding. Such threats have been found constitutionally offensive when directed without case-specific justification to a participant in a criminal case who must decide upon a future course of action. *Cf. Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (due process violated when a trial judge gratuitously singled out a prospective defense witness for an unnecessarily harsh admonition on the dangers of perjury, whereupon witness failed to testify).

Rule 39 lies in its requirement that the process of advising indigent defendants of their duty to repay under Rule 39 be inserted into the indigent defendant's first courtroom appearance.

Rule 39 currently requires that, as a precondition of seeing an attorney, the indigent defendant must in effect make a binding commitment to become a judgment debtor in accordance with the detailed provisions of the recoupment rule. Because the rule calls for the choice as to appointed counsel to be presented to the defendant in open court at the first appearance, the indigent defendant, once advised of Rule 39, may have only moments to absorb the information, to reflect, and to decide—often under the impatient gaze of a judge in a courtroom crowded with spectators, guards, and other defendants awaiting the call of their own cases. And for the vast majority of indigent defendants— those charged with misdemeanors—this decision must be made at virtually the same time as the decision on the plea to be entered. The rule thus inextricably entwines the demand for immediate, binding acquiescence to the entry of a Rule 39 judgment for attorney's fees, not only with the choice of requesting appointed counsel, but also with the already difficult, confusing, and stressful choice of how to plead.

Rule 39 makes no provision for the indigent defendant who contemplates requesting appointed counsel to consult with prospective counsel about the professional services that may be rendered, the benefits of representation, the potential merit of the charges, or the risks of self-representation. The rule seemingly makes even the most preliminary access to the advice of counsel contingent on an immediate on-record commitment to the entry of a judgment for fees in accordance with the schedule set out in Rule 39(d).

In contrast, the nonindigent defendant will normally have the ability to choose between retaining and waiving counsel after the defendant has already consulted with counsel about the potential benefits and detriments of these options, and frequently after having consulted about the potential merits of the case. Nothing in the rule, or in the schedule of fees included therein, extends to indigent defendants any right to the type of referral and initial consultation that are available as a matter of course through the Alaska Bar Association to nonindigent defendants.

Indigent and nonindigent defendants alike can properly be confronted with the economic choice of whether legal representation is worthwhile. As a practical matter, however, nonindigents can make this choice after consulting counsel and reflecting on their options. Rule 39 should put indigent defendants on an equal footing. Rule 39(b)(1) requires that defendants who make a request for appointed counsel during their first court appearance be screened to establish their financial eligibility therefor. The screening process is typically conducted by a designee of the court and occurs after the initial court proceeding has been concluded. There is no apparent reason why the process of advising defendants of their duty to pay the costs of appointed counsel could not similarly be deferred until after a preliminary request for counsel has been made.

A final unique and uniquely troubling aspect of Rule 39 inheres in the provision of the rule calling for the court system itself to take charge of the entire process of collecting a state debt. Under the rule, the responsibility for initiating the action and for its prosecution is placed in the hands of the court, together with the responsibility for adjudication, for the entry of judgment, and for enforcing the judgment once entered. Normally, of course, the Department of Law is responsible for initiating and prosecuting actions for state debt; the courts adjudicate and enter judgment. I can think of no other situation in which the entire menu of collecting a debt, from soup to nuts, is heaped onto the court system's plate.

This unique aspect of the rule is troubling because of the appearance it creates. For it inevitably tends to foster the appearance of conflict; it thereby compromises the court's ability to hold itself out as neutral arbiter of justice. In *Public Defender Agency v. Superior Court*, 534 P.2d 947 (Alaska 1975), the Department of Law suggested that the court system itself, through the court trustee, take responsibility for prosecuting contempt actions. This court rejected the suggestion:

A well established principle of law is that the court may not combine prosecutorial and judicial functions. Although this precept most often arises in the criminal context, it is equally applicable in the civil area where the conflict of interest and the combination of functions is as readily apparent. For this reason, it would be unwise if not unconstitutional, as a violation of the doctrine of separation of powers, to charge the court trustee with the duty to prosecute contempt actions.

*Id.* at 951–52 (citations and footnote omitted).

Here, too, there is a "readily apparent" conflict in the court system taking charge of the prosecution and adjudication of debts for appointed counsel. When viewed through the eyes of an indigent defendant at an arraignment, this conflict may appear to infect, not only the court's neutrality with respect to adjudication of recoupment issues, but also its neutrality with respect to the criminal charges that provide occasion for attorney's fees to arise.

This feature of Rule 39, too, is unnecessary. Surely it is not indispensable to an administratively efficient recoupment plan that the court system itself initiate and prosecute all recoupment actions; just as surely the Department of Law can be entrusted, as it is in other matters of public debt, with this job.

Many indigent defendants who arrive in court for their first appearance are already suspicious of the court system's ability to dispense justice. These suspicions can only be confirmed when the defendants learn, not only that they will be required to repay the state for court-appointed counsel, but that the court itself will prosecute the case against them if they fail. The confirmation, in turn, may quickly lead to a waiver of counsel that is born of frustration and hopelessness.

I must emphasize that, for purposes of determining whether Rule 39 violates Albert's constitutional right to counsel, the threat of enforcing this kind of a recoupment plan against a prospective recipient of appointed counsel is as significant as its actual enforcement. As I indicated at the outset, I find nothing impermissible in presenting the indigent defendant with the same economic choice as to representation as the nonindigent defendant must make. But I find little similarity, in kind or circumstance, between the economic choice the nonindigent makes and the choice presented to an indigent defendant under Rule 39.

Imagine a criminal justice system that allowed a defendant who could afford to hire an attorney the right to consult with and retain counsel only if the defendant made an express request for counsel in open court after being told, by the judge personally, that counsel could be retained only in accordance with a predetermined schedule which arbitrarily pegged fees to the number and kind of proceedings the defendant engaged in; that upon convicting the defendant the court would automatically enter a civil judgment for the scheduled amount of fees and would automatically order the defendant, upon pain of contempt, to apply for permanent fund dividend payments until the judgment was satisfied in full; and that, although the defendant could file an objection within ten days of notice of entry of judgment and the court would have discretion to hold a hearing upon receipt of the objection, there would be no right to a trial or a hearing as to the judgment's entry.

To be sure, this imaginary system would not long survive if an attempt were made to foist it on paying defendants. And the reason it would not survive is precisely that the paying defendant in our imaginary system would obviously face a choice that is patently "different in kind from the economic choice" that the same paying defendant faces in deciding whether to retain counsel under our current system. Yet the choice presented to the nonindigent defendant in our hypothetical situation is essentially the same choice that Rule 39 now foists on the indigent defendant who cannot afford to retain an attorney and must decide whether to request appointed counsel. Because this choice is profoundly "different in kind from the economic choice which must be made by a nonindigent accused of crime," there is compelling reason to ask whether subjecting defendants to the potentially chilling effect of such disparate treatment is actually necessary.

Under the test of *United States v. Jackson*, 390 U.S. at 582, 88 S.Ct. at 1216–17, the pertinent question for purposes of determining whether Rule 39 violates Albert's right to counsel is whether the choices facing indigent defendants under the rule "needlessly chill the exercise of [the] basic constitutional right [to counsel]." In other words, whether they are "unnecessary and therefore excessive." *Id.* And, under the equal protection test described in *James v. Strange*, 407 U.S. at 138–39, 92 S.Ct. at 2033, it is pertinent to inquire whether the state has "impose[d] unduly harsh or discriminatory terms merely because the obligation is to the public treasury rather than to a private creditor[,]" and whether "[t]he indigent defendant ... is uniquely disadvantaged in terms of the practical operation of the [rule]."

Most indigent defendants haled into court on criminal charges will have enough economic savvy to understand that Rule 39's method of debt collection is not mainstream—that it is not the conventional way we go about organizing and enforcing relationships between creditors and debtors in our American legal and social systems. It is thus not unreasonable to expect that many indigent defendants will sense palpable unfairness when confronted in open court by a judge who conditions their access to counsel upon the nonnegotiable demand that they assent without significant procedural recourse to the entry of an adverse judgment for attorney's fees in a predetermined amount which bears no perceptible relationship to the value of services that may actually be rendered. It seems quite reasonable to expect many indigent defendants in these circumstances to be discouraged from requesting counsel. Indeed, a more intimidating and coercive setting—one less conducive to a knowing, reasoned and voluntary choice

as to the exercise of the right to appointed counsel—would be difficult to design. It escapes me how the majority can conclude that the procedural setting prescribed by Rule 39 is not coercive; that it does not discourage the exercise of the constitutionally secured right to counsel, but rather entails a choice "no different in kind from the economic choice which must be made by a nonindigent accused of crime."

The majority's effort to skirt the discriminatory nature and chilling effect of these provisions verges on the paradoxical. The majority holds that the question of chilling is not ripe, since Albert has not proved a chilling effect.[18] At issue, however, is Rule 39's potential for chilling the exercise of the right to counsel. To prevail, Albert need not allege that he was in fact chilled; nor must he demonstrate that others have been. *United States v. Jackson*, for example, considered a federal kidnapping statute under which the death penalty could be applied only in the case of a defendant who requested a jury trial. The Supreme Court invalidated the death penalty provision, holding that it violated the constitutionally protected right to a jury trial by unnecessarily chilling the exercise of that right. 390 U.S. at 570, 88 S.Ct. at 1210. The Court issued this ruling even though the defendants had not personally been chilled from exercising the right to a jury trial—in fact, they had not yet been tried and had apparently produced no evidence establishing that others had been chilled. *See id.*, 390 U.S. at 571, 88 S.Ct. at 1210–11.

Likewise, in *City of Anchorage v. Scavenius*, 539 P.2d 1169 (Alaska 1975), this court was asked to construe Civil Rule 72(k) to allow an award of attorney's fees against an

---

18. The state cites court system statistics purportedly showing that virtually none of the potentially indigent defendants interviewed by Pretrial Services refused counsel because of Criminal Rule 39. These statistics shed no light on what percentage of potentially indigent defendants actually refuse counsel because of Rule 39. Pretrial Services typically interviews defendants referred from the courtroom who have already been through their initial appearances, have been advised of Rule 39, and have nonetheless requested counsel. Defendants who reach the

door of Pretrial Services have been pre-chilled and have shown themselves immune. If anything, the Pretrial Services statistics prove too much: by showing that virtually no prospective recipients of appointed counsel decline representation based on Rule 39 at the Pretrial Services level, the statistics arguably demonstrate the efficacy of the rule's chilling effect in the courtroom setting. Apparently, virtually no defendant capable of being deterred by Rule 39 is left undeterred by the open court advisement.

unsuccessful landowner in a condemnation case. In rejecting the proposed interpretation, this court relied in large part on the potential chilling effect that such an interpretation might have on the property owner's willingness to assert the constitutional right to just compensation for the condemned property.[19] This court expressed no reluctance to consider the chilling effect issue on a purely predictive basis.

For constitutional purposes, the relevant inquiry is how many potential recipients of appointed counsel have not been immune to the chilling treatment they received in the courtroom; how many have declined to make an in-court request for appointed counsel due to the uniquely intimidating nature of Rule 39. There are no statistics to illuminate this issue; the court system has failed to keep them. Given this failure, it is at once unfair to fault Albert for his inability to prove Rule 39's chilling effect and anomalous to expect that anyone will ever be able to offer such proof. I would find Rule 39 violative of the constitutionally guaranteed rights to counsel and to equal protection.

## IV. NONCONSTITUTIONAL DISPOSITION

The majority's treatment of Albert's constitutional claims is incomplete and based on flawed assumptions; the correct resolution of Albert's claims is far less certain than the majority opinion asserts. Even if Rule 39 were constitutional, however, I would disagree with the majority's decision to dispose of Albert's case on constitutional grounds. Although my dissent necessarily addresses and responds to the majority's treatment of the constitutional issues, I would have preferred to reach a nonconstitutional disposition in this case. There is, in my view, good reason do so.

The majority's constitutional analysis breaks new legal ground and is, at best, shaky. At worst, it is both wrong and wrongful. Yet the constitutional issues debated by the parties in this case revolve exclusively around a rule that the court itself has drafted and is free to alter—a rule that can readily be amended, at no cost to its efficacy, to avoid the serious and substantial concerns Albert voices. Given that the amendment of Rule 39 to avoid potential constitutional difficulty appears to offer a practical, straightforward, and easily accomplished alternative disposition in the present case, I find the majority's enthusiastic exploration of new constitutional terrain difficult to justify.

Particularly incongruous is the majority's endorsement of the rule, as is, by a narrowly exegetic application of low-level equal protection scrutiny. The minimal scrutiny that courts traditionally give to legislative enactments is born of the separation of powers doctrine. It reflects that the judicial branch cannot usurp the powers exercised by co-equal branches of government and that great deference must therefore be given in reviewing the legitimacy of laws subjecting differing groups to disparate treatment.

Transposed to the present context, in which the court reviews a rule of its own creation, the traditional rationale for minimal scrutiny in an equal protection case makes little sense at all: the court owes no deference to its own rule-making decisions and is free to alter its rules if it believes they ought to be changed. The question at the heart of this case is not whether the court must, through a process of deferential review, uphold an enactment of the legislative branch. Rather, because the challenged provision is the court's own rule, the fundamental question is one of policy: namely, is it desirable to perpetuate Rule 39 in its current form? This is another issue that the majority refuses to acknowledge or address.

19. Specifically, this court held:
    To place the property owner in the position of having to risk payment of often substantial expenses incurred by the condemning authority for expert witnesses, other costs and attorney's fees, as well as his own expenses in order to secure even an initial adjudication of the amount to which he is entitled, would so chill the right to secure just compensation as to nullify the effectiveness of the constitutional provisions. Faced with the choice of incurring such expenses, many property owners would feel compelled to give up their right to seek adjudication of the amount of compensation to which they would be entitled and would accept any amount tendered by the condemnor. *Id.* at 1175.

The majority does not deny that Albert may suffer adverse effects from the inequities built into Rule 39, but says only that his interest in equal treatment is not very important. And the majority does not defend the rule's procedural shortcuts as necessary or unavoidable but says only that they constitute a minimally rational way of efficiently collecting Albert's money. Accepting arguendo the dubious proposition that this is a sufficient resolution of Albert's equal protection claim, I fail to see how the majority's view does anything to resolve the more fundamental question of why the court would want to perpetuate a rule whose disparate treatment of indigent defendants is unnecessary and only minimally rational.

That Rule 39 may be minimally adequate to pass constitutional muster under low-level scrutiny says very little. If this is all that can be said in defense of the rule, it is not enough. When a right as fundamental as the constitutional right to counsel is at stake, the court's rule-making obligations require a better justification or a better rule.

## V. CONCLUSION

I would hold that the Alaska Constitution requires that courts be given discretion to consider an indigent defendant's ability to repay as a factor in determining whether to enter a recoupment judgment. Beyond that, I would revise Rule 39 along the other lines suggested in this dissent.[20] I would adopt these changes, not because they are all constitutionally necessary, but to avoid the risk of violating the constitution—a risk that, in my view, can be avoided without significant

sacrifice to the state's interest in recoupment or the court system's need for administrative efficiency.

"It is a well established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Escambia County v. McMillan,* 466 U.S. 48, 51, 104 S.Ct. 1577, 1579, 80 L.Ed.2d 36 (1984); *see also Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Deubelbeiss v. Commercial Fisheries Entry Comm'n,* 689 P.2d 487, 491 (Alaska 1984) (Compton, J., concurring). The majority opinion disregards this fundamental precept by unnecessarily deciding close and difficult questions of constitutional law that arise from a poorly considered rule of the court's own creation. The court should give thought to amending Criminal Rule 39 to avoid the constitutional problems the rule creates.

Faced with the choice between amending a marginally defensible rule to avoid potential constitutional difficulties and upholding it by a chancy application of constitutional doctrine, I would opt for the "prudent exercise" of avoiding the constitutional issues and amending the rule. *Escambia County v. McMillan,* 466 U.S. at 51, 104 S.Ct. at 1578–79.

Accordingly, I dissent.

---

**20.** Specifically, I would revise the existing rule:

1) by eliminating the rule's fee schedule and requiring payment based on the cost of services actually rendered;

2) by requiring a consideration of ability to pay prior to entry of judgment and by allowing the court, in its discretion, to refrain from entering judgment when the entry of judgment against a defendant who has no foreseeable ability to pay would defeat the goal of rehabilitation;

3) by providing for a prejudgment hearing as a matter of right to determine both the reasonable amount to be charged for services rendered and ability to pay, and by providing that in contested cases the initiation and prosecution of recoupment actions be within the responsibility and discretion of the Department of Law;

4) by eliminating the requirement that defendants be ordered to apply for permanent fund dividend payments and the related provision allowing defendants to be prosecuted for contempt if they fail to do so;

5) by removing the process of advising the defendant of the need to repay under Rule 39 from the courtroom setting and making it a part of the post-request, out-of-court financial screening process, *see* Rule 39(b)(1); and

6) by providing defendants who have been informed of the duty to repay under Rule 39 the opportunity for a preliminary consultation with appointed counsel before deciding on the issue of waiving the right to appointed counsel, and by requiring that defendants be informed of this opportunity.